FRANK MOLEA & another *vs.* AETNA INSURANCE COMPANY
(and seven companion cases[1]).

Suffolk.    November 6, 1950. — December 5, 1950.

Present: QUA, C.J., LUMMUS, RONAN, & COUNIHAN, JJ.

*Insurance,* Fire insurance: agreement on amount of loss, reference,
waiver. *Waiver.*

Evidence, that after a loss by fire of property covered by a Massachusetts
standard fire insurance policy representatives of the insurer conferred
with the State fire marshal and with the district attorney and testified
at a trial of the insured upon a charge of burning the property, did not
warrant a finding that the insurer denied liability under the policy, and
the insured was not relieved on that ground of the necessity of seeking
a reference as to the amount of the loss as a condition precedent to
maintenance of an action on the policy.

A payment made by the insurer under a Massachusetts standard fire
insurance policy to a mortgagee named in the policy to cover a loss
sustained by the mortgagee through a fire was not, as between the in-
surer and the insured, evidence of liability of the insurer or of waiver
by it of the requirement of a reference as to the amount of loss.

A finding that the insurer and the insured under a Massachusetts standard
fire insurance policy upon personal property came to an agreement as
to the amount of a loss, so that the provision for a reference in the
policy became inapplicable, was not warranted by evidence merely
that after the fire an inventory of the property as it existed just before
the fire was prepared in behalf of the insured to be used only as a basis
for adjustment and not as a proof of loss, and that an appraiser for the
insurer "spot checked" the inventory and found everything therein
stated to be true.

EIGHT ACTIONS OF CONTRACT. Writs in the Superior Court
dated November 19, 1946.

The actions were tried before *Burns,* J.

---

[1] The seven companion cases are by the same plaintiffs against Hanover
Fire Insurance Company, Granite State Fire Insurance Company, The
Mercantile Insurance Company of America, Salem Mutual Fire Insurance
Company, Cambridge Mutual Fire Insurance Company, Abington Mutual
Fire Insurance Company, and Worcester Mutual Fire Insurance Company,
Inc.

*D. Smerdon,* (*T. M. Vinson* with him,) for the plaintiffs.

*C. W. O'Brien,* for the defendants Aetna Insurance Company and others (*J. F. Driscoll,* for the defendant Worcester Mutual Fire Insurance Company, Inc., with him).

*R. M. Morrison,* (*S. Fishman* with him,) for the defendant Granite State Fire Insurance Company.

COUNIHAN, J. These are eight actions of contract in which the plaintiffs seek to recover on separate policies of fire insurance in Massachusetts standard form. Seven of these policies covered personal property, and one, issued by the Granite State Fire Insurance Company of Portsmouth, New Hampshire, hereinafter called the Granite company, covered the building which contained the personal property. The actions were tried to a jury. At the close of the testimony all of the defendants filed motions for directed verdicts which were allowed by the judge. The actions are here upon the plaintiffs' exceptions to the allowance of these motions.

The policies all contained the standard provisions of G. L. (Ter. Ed.) c. 175, § 99, as amended, which so far as pertinent are, "In case of any loss or damage under this policy, a Statement in writing, signed and sworn to by the insured, shall be forthwith rendered to the company, setting forth the value of the property insured, the interest of the insured therein, all other insurance thereon in detail, the purposes for which and the persons by whom the building insured, or containing the property insured, was used, and the time at which and manner in which the fire originated, so far as known to the insured. The company may also examine the books of account and vouchers of the insured, and make extracts from the same. In case of any loss or damage, the company, within sixty days after the insured shall have submitted a statement, as provided in the preceding clause, shall . . . pay the amount for which it shall be liable, which amount, if not agreed upon, shall be ascertained by award of referees as hereinafter provided, . . . with interest thereon from the time when the loss shall become payable, as above provided. . . . In case of loss under this policy

and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men . . . and such reference, unless waived by the parties, *shall be a condition precedent to any right of action . . . to recover for such loss.*"

Section 100 of c. 175 provides for the mechanics for such reference, and imposes on the insured the burden of making a written demand on the company for the reference of the amount of loss to three referees, if the parties fail to agree as to the amount of loss. Section 102 of c. 175, as amended, provides that in certain circumstances lack of sworn statement of loss shall not be taken advantage of by the company and in these circumstances extends the sixty day period referred to in § 99, as amended.

It is agreed that no written demand for a reference was ever made by the insured and that no reference to three disinterested referees was ever had.

In each case the defendant relied on the absence of a request for a reference as a bar to recovery. The Granite company set up, as additional defences, the absence of any evidence on which the jury could determine the loss under its policy and the failure of the insured to file with it a sworn statement of loss. The plaintiffs in each case relied upon a waiver of the terms of the policy requiring a reference to arbitrators.

Other grounds have been suggested for permitting or denying recovery on these policies, but we believe that the real issue before us is whether or not the plaintiffs have proved the waiver of or excuse from compliance with the provision for reference because of their contention that an agent of the companies impliedly agreed upon the amount of loss.

The evidence on this issue is in substance the following: The fire occurred on November 27, 1944, in the factory of the plaintiffs at 241 West Water Street, Rockland, where they were engaged in manufacturing shoe ornaments. The plaintiffs at once notified an agent of the seven companies which covered the personal property loss. No written notice

of the fire was ever given by the plaintiffs to the Granite company. Immediately thereafter an attorney for the plaintiffs had a detailed inventory and appraisal of the personal property made by one Beals, a fire insurance appraiser. Within two days after the fire an agent of the seven companies, one Stratton, was at the scene of the fire. On December 18, 1944, in the presence of Stratton and the attorney for the plaintiffs, the plaintiffs and their appraiser signed the inventory and appraisal prepared by Beals. The plaintiffs, the attorney for the plaintiffs, and Beals all testified that this inventory was intended as an appraisal or physical inventory of items of personal property in the premises just prior to the fire to be used as a basis for adjustment and not as a proof of loss. This inventory showed that the plaintiffs had personal property on the premises valued at $28,424.19. Another inventory and appraisal was made for the plaintiffs by two disinterested persons, showing the value of the personal property to be $27,205.38, and a total loss caused by the fire of $26,708.65. There was no evidence that any agent of the Granite company ever went to the scene of the fire for the purpose of investigating, estimating or appraising any loss under its policy. Stratton and the attorney for the plaintiffs had several telephone talks after the meeting of December 18. Stratton also talked with an agent of the State fire marshal's office in the basement of the insured premises a day or two after the fire. He also went to the office of the district attorney and testified at two criminal trials involving these plaintiffs on account of this fire. Two appraisers for the seven companies, one Glagovsky and one Brady, went to the premises and appraised the personal property. One Solomon, a certified public accountant, examined the books of the plaintiffs and made excerpts from them for the seven companies. He and Glagovsky also testified at the criminal trials for the Commonwealth.

Brady "spot checked" Beals's inventory on the plaintiffs' premises and found everything to be as stated in the inventory. No sworn statement of loss was ever requested

of the plaintiffs by any of the companies. Notwithstanding this the attorney for the plaintiffs on April 25, 1945, sent to each of the seven companies a sworn statement of loss in form substantially as provided by § 99 of c. 175, as amended.

The receipt of these statements was acknowledged by Stratton in a letter to the plaintiffs dated June 4, 1945, but the proofs of loss were rejected as being incomplete and not in accordance with the facts, and for other reasons to be made known later at the proper time and place. The letter further stated that, as an adjuster, Stratton had no authority to admit or deny liability or to waive any of the terms, stipulations, or conditions of the policies, but on the contrary insisted upon a full and strict compliance with them. No sworn statement of loss was ever sent to the Granite company. The Granite company paid a mortgagee named in its policy, which made claim, the sum of $712.50 to cover the mortgagee's loss. It appeared that the plaintiffs were indicted and tried in the Superior Court for setting fire to the insured property, and convicted and sentenced. The records of the convictions and sentences were admitted by the judge solely for the purpose of impeaching the credibility of the plaintiffs.

The plaintiffs argue that arbitration would have been a useless waste of time and money, and that no award would have been paid because the defendants denied liability. The short answer to this is that there was no evidence of denial of liability by any of the defendants. The action of representatives of the seven companies in conferring with the State fire marshal and the district attorney and in testifying at the criminal trials was part of their obligation as citizens of our Commonwealth to assist its authorized officers in discovering and prosecuting those suspected of being engaged in the commission of crime. See *Commonwealth* v. *Sansone,* 252 Mass. 71, 75.

The payment of money to the mortgagee named in its policy by the Granite company was no evidence of liability or waiver because it was required under the terms of the policy and G. L. (Ter. Ed.) c. 175, § 97, as amended. See *Union Institution for Savings* v. *Phoenix Ins. Co.* 196 Mass. 230.

We are of opinion that there was no error in directing verdicts for all of the defendants. The matter of reference to three disinterested persons, unless waived by the parties, was a condition precedent to recovery upon the policies, if the parties failed to agree upon the amount of loss. Since it is agreed that no request for reference was ever made by the plaintiffs and no reference was ever had, the plaintiffs are barred from recovery here unless waiver or excuse is shown. It is not disputed that such condition precedent may be waived orally by an insurance company, and that waiver or excuse may be inferred from the conduct of its agents or representatives. The burden of proving such waiver or excuse falls upon the plaintiffs who seek to rely upon it. *Hutchinson* v. *Liverpool & London & Globe Ins. Co.* 153 Mass. 143, 145. *Lamson Consolidated Store Service Co.* v. *Prudential Fire Ins. Co.* 171 Mass. 433, 436. Couch on Insurance, § 2238. While the parties have all argued the question of waiver as the issue, we believe that strictly speaking the issue is not one of waiver but rather whether or not the parties agreed or failed to agree upon the amount of loss. There was no evidence of waiver other than that which the plaintiffs claimed tended to show that a representative of the seven companies agreed to the amount of loss on the personal property. To recover the plaintiffs must sustain the burden of showing that an agreement as to the amount of loss was arrived at by all parties. *Bergeron* v. *Mechanics & Traders Ins. Co.* 226 Mass. 236, 239. If the jury could so find, undoubtedly the provision for a reference would be inapplicable. *F. & M. Skirt Co. Inc.* v. *Rhode Island Ins. Co.* 316 Mass. 314, 316. The only evidence as to this was that Beals, an appraiser for the plaintiffs, prepared an inventory and appraisal of the personal property as it existed just prior to the fire, and that Brady, an appraiser for the seven defendants, "spot checked" this inventory and found everything as therein stated to be true. This inventory, however, was intended only as an appraisal or physical inventory of the items of personal property in the premises at the time of the fire, to be used

as a basis of adjustment and not as a proof of loss. Without passing upon the authority of Brady to bind the defendants, as to which there was no evidence other than that he was sent to make an appraisal for them, we are of opinion that the conduct of Brady would not justify a finding by the jury that the parties had come to an agreement on the amount of loss. The fact that this inventory was to be used as a basis of adjustment and not as a proof of loss indicates that there was no discussion by Brady with Beals at this time as to the amount of loss, so that no agreement could have been arrived at. There was no evidence that Brady's attention was ever brought to another inventory and appraisal made by other representatives of the plaintiffs, which arrived at a different estimate of the value of the personal property just before the fire and included also an estimate of the loss sustained. If these estimates had been shown to Brady and he had agreed to them, this might have afforded some basis for the contention of the plaintiffs.

This court has said, "A jury has often been permitted to infer a waiver of a special defence by an insurance company from very slight evidence. But we are not aware of any case in which such an inference has been allowed . . . without proof of some conduct of the company bearing upon the particular defence." *Union Institution for Savings* v. *Phoenix Ins. Co.* 196 Mass. 230, 236. This statement, we believe, is applicable to the facts in the present cases.

Because of the conclusions we have reached, we need not consider the effect of Stratton's letter of June 4, 1945, in reply to the statement of loss sent by the plaintiffs on April 25, 1945. Likewise it is unnecessary to consider the records of convictions and sentences of the plaintiffs for conduct respecting the fire which the defendants urged as a defence to these actions. Inasmuch as there was no request for a reference to the Granite company and no evidence of any waiver or excuse on the part of the Granite company, we need not pass upon other defences raised by it.

*Exceptions overruled.*